*E-Filed 8/11/05*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OMNI PACIFIC COMPANY, INC.,

    Plaintiff,

    v.

OMNIBRANDS, INC.,

    Defendant.
_____/

Case No. C04-01445 JW (HRL)

**ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

On August 9, 2005, this court heard plaintiff's motion to compel discovery. Based upon the papers submitted and the arguments of counsel, the court issues the following order.

**BACKGROUND**

In this action, Omni Pacific Company accuses OmniBrands, a Safeway subsidiary, of trademark infringement and unfair competition. The parties compete in the wholesale distribution and export of groceries, although the extent of the competition is disputed.

On March 30, 2005, this court issued a discovery order requiring defendant to produce five categories of documents by April 11, 2005: invoices, customer lists, vendor information, financial information, and e-mails. Plaintiff and defendant dispute whether defendant is in compliance with that order.

In the current motion, plaintiff moves the court to hold defendant in contempt for failure to comply with the court's prior order, and to compel production of documents required by that order as well as other documents responsive to plaintiff's first request for production.[1] Plaintiff further moves to reopen of the deposition of Thomas Lee, to require the production of certain emails that defendant asserts are protected by the work product doctrine, and for an order imposing sanctions.

## DISCUSSION

### I. Defendant's Compliance With the Court's Order of March 30, 2005

The court order of March 30, 2005, required defendant to produce a number of categories of documents responsive to plaintiff's first request for production. The parties dispute whether defendant has complied with that order in two areas: customer lists and financial information.

#### A. Customer Lists

The March 30 order required production of "all customer lists (including those listing targeted prospective customers) kept in the ordinary course of business since 1997 for foreign and domestic customers." The court deemed this information relevant to determining the extent of overlap of the parties' businesses, and plaintiff's potential lost earnings.

On April 11, the production date set by the court, defendant produced the following:

- A list of entities from whom defendant had received payments;
- A list of entities to whom defendant has shipped products; and
- A letter stating that, after a diligent search, defendant could not locate any lists of targeted prospective customers kept in the ordinary course of business.

Then, on June 17, 2005, after "checking back with OmniBrands' salespeople," defendant located a list of "potential contacts" that had apparently been prepared only two weeks prior. *See* Weikert Decl., Ex. H. Weeks later, on July 8, 2005, defendant produced a "list of contacts" prepared around 2000, and approximately 4-5 other lists of prospective customers recently compiled for this

---

[1] Defendant argues throughout its opposition that plaintiff's motion also raises issues arising out of plaintiff's second request for production, to which responses were not due until August 1, 2005. Plaintiff filed this motion on July 12, 2005, and included these "new" issues apparently because of their overlap with aspects of the court's prior order and perhaps in anticipation of defendant's refusal to produce responsive documents. The court declines to address plaintiff's motion to the extent that it specifically relates to plaintiff's second request for production. If plaintiff believes that those issues remain unresolved, it may move the court for relief after fulfilling its meet and confer obligations.

2

litigation by defendant's salespeople, based on their customer files, Rolodexes, business cards and personal address books.

### 1. Parties' Arguments

Plaintiff states that defendant has either not produced, or failed to adequately search for, all prospective customer information in a timely manner. It argues that defendant's initial statements that it had no prospective customer lists kept in the ordinary course of business were false, since it has since produced lists it claims were recently discovered or compiled for this litigation. Plaintiff also claims that defendant made the most recent production solely because its misrepresentations were exposed during deposition testimony by defendant's former employees, Thomas Lee and Ron Messer, both of whom stated that they kept files containing business cards and contact information for all prospective customers who visited their stall at trade shows. The deponents stated that this information was sometimes kept in electronic form, and sometimes kept in hard format, such as Rolodexes.

Defendant contends that it has complied with the court's order requiring the disclosure of customer lists. It states that it produced all customer lists kept in the ordinary course of business as soon as they were located, further insisting that it had no prospective customer lists kept in the ordinary course of business. Defendant says that its recent production of a just-created list was illustrative of its effort to be helpful, even though such production was not required by the court order. *See* Matteo-Boehm Decl., Ex. O.

### 2. Analysis

In its opposition to the original motion to compel (the motion resulting in the March 30 order), defendant stressed that its customer lists were highly confidential and had taken decades of diligent work to compile. A sworn declaration from Director of Sales, Patti Ryland, stated: "Defendant carefully guards its customer lists. Only members of the OmniBrands sales team, Safeway's finance department, and other Safeway officers are given access to Defendant's customer lists." Ms. Ryland further declared:

> Defendant has employed a sales team consisting of an average of five employees working for an average of 2,000 hours per year for 23 years, so that Defendant's customer lists represent an investment of approximately 2300,000 worker hours. Defendant's customer lists also represent years of valuable market research with respect to particular customer characteristics, needs and preferences.

3

*See* Ryland Decl. in Supp. of Opp. to [First] Mot. to Compel at 2.

There was not even a suggestion in defendant's opposition back then that customer lists did not exist. They <u>did</u> exist, but were too sensitive to turn over to a competitor. Now the court hears a different story: pretty much they do not exist, at least as to prospective customers. Now Safeway says it has done what it can to <u>create</u> some lists of prospective customers from information kept by sales people, but there were and are no such lists "kept in the ordinary course of business."

At the hearing on the present motion, when questioned about these inconsistencies over customer lists, defendant's counsel stated that Ms. Ryland's declaration only addressed existing customer lists, and it was not intended to be construed as describing lists of potential customers. Defense counsel reiterated the position that no lists of potential customers were kept in the ordinary course of business. Counsel claimed this, despite the fact that Ms. Ryland's earlier declaration also stated, in a paragraph directly following the one quoted above:

> Accidental disclosure of existing *and potential* customer information to Defendant's competitors would eviscerate a competitive advantage that Defendant has developed with [sic] over two decades of hard work and the investment of significant monetary resources.

*See id.* (emphasis added). And, significantly, defendant's opposition papers to the first motion to produce stated: "Because Defendant's . . . prospective customer lists [are] not relevant . . . to Plaintiff's prosecution of this action, Defendant should not be compelled to produce these lists." *See* Opp. to [First] Mot. to Compel at 14.

The court views these plainly inconsistent positions as either gross carelessness, or more ominously, as suggesting a willingness to manipulate and, perhaps, to manufacture facts for the purpose of avoiding discovery. At the very least, defendant has in the court's eyes seriously undermined its credibility.

Accordingly, if it has not already done so, defendant is ordered to produce complete lists of all its current and prospective customers, whether or not kept in the ordinary course of business. To ensure that defendant is providing an accurate and complete disclosure, defendant is further required to produce all information kept in its employees' customer and/or trade show files, including business cards, Rolodexes, address books, electronic files, and any other information related to target or prospective customers.

4

### B. Financial Information

The court specifically required defendant to produce its gross sales and net profits by country since 1997 and all individual annual reports and profit/loss statements since 1997. On April 11, defendant produced the following:

- Supply Operating Results, Safeway Inc. for 1997-2001;
- Corporate Brands Operating Results Profit and Loss Report for 2001-2004;
- US Supply Operations Profit & Loss Report for 2002-2004;
- Invoices reflecting sales to foreign customers since 1997;
- A letter stating that information on "sales by country" would be produced "in about two weeks."

Over the course of subsequent months, apparently after repeated requests by plaintiff, defendant produced the following:

- Safeway Supply Operations US Public/Export Customers by Country, net sales 1997-2004 (a summary report reflecting sales of goods sourced from Supply Operations, produced June 17, 2005);
- Safeway Supply Operations—Total Public/Export Sales (for years 2002-2004) (sales by country from the Corporate Brands Warehouse, produced July 8);
- Safeway Corporate Brands US Public/Export Customers by Country, net sales 1997-2004 (produced July 15); and
- US Supply Operations P&L Details, Actual, 2000-2004 (reflecting cost information of Supply Operations, produced July 22).

Much of this information was compiled specifically for this litigation.

### 1. Parties' Arguments

Plaintiff states that defendant has not complied with the court's order because the information provided does not disclose defendant's net profits by country, nor is it sufficient to enable plaintiff to

5

calculate such profits. Specifically, defendant has provided no detailed cost information associated with the Corporate Brands division.[2]

Further, plaintiff argues that defendant has produced only annual profit/loss statements, rather than *all* profit/loss statements. Defendant's former employees testified at deposition that during their employment, sales team members received a quarterly or monthly "sales recap," referred to by one individual as a "P&L." Plaintiff believes that production of these documents was required by the March 30 order.

Defendant claims it has complied with the court's order to the best of its ability. Defendant blames its failure to produce net profits by country on limitations in its financial database, noting that it cannot produce such figures without a "compilation or expert opinion." It notes that compiling the report for net sales by country took two weeks.

Defendant further claims that it only learned of the "sales recaps" at the recent depositions, which are not actual "P&L's" and are not produced annually. Finally, defendant argues that plaintiff only requested these sales recaps in its second request for discovery, the responses to which were due on August 1, after plaintiff had already filed this motion to compel.

**2.   Analysis**

Defendant has failed to comply with the court order because it has not provided complete information on net profits by country, and much of the information it did provide was produced long after the court's production deadline. Defendant's assertion that its financial database cannot calculate net profits by country does not relieve it from its discovery obligations. Plaintiff is entitled to information sufficient for to make an accurate estimation of damages. Accordingly, defendant shall produce sufficient information to allow plaintiff to calculate net profits by country. This information should include detailed cost information associated with the Corporate Brands division, such as general ledger information for the Corporate Brands Warehouse. It should also include the functional

---

[2]OmniBrands business is comprised of two divisions: Corporate Brands Warehouse and Supply Operations.

6

equivalent of the sales recap statements it produced for the Supply Operations division.[3] Finally, defendant should produce all data (in usable electronic form) provided to its experts.[4]

The court agrees with defendant that the prior discovery order only required the production of its annual profit/loss statements. Therefore, defendant's production on this point is adequate.

**II.   Additional Issues**

In addition to arguing that defendant has not complied with the court's previous order, plaintiff moves to compel the production of additional documents and to reopen the deposition of Thomas Lee. These requests center around two categories of information: trademark/trade name searches and emails designated as "work product."

**A.   Trade Name and Trademark Searches**

**1.   Document Request No. 29**

Plaintiff moves to compel production of documents responsive to Request No. 29 of its first request for production:

> All documents constituting, referring to, or relating to research, search reports, surveys, investigation, marketing studies, brand awareness studies, focus groups, memoranda, formal and informal interviews, and/or reports relating or pertaining to any mark or trade name incorporating the sequence of letters "OMNI," including but not limited to "OmniBrands," "OmniBrands, Inc.," and "Omni," either alone or combined with the term "Safeway," and/or "Omni Pacific."

**i.   Parties' Arguments**

Plaintiff claims that defendant has produced no documents responsive to No. 29. Based on the deposition testimony of Thomas Lee, plaintiff believes that defendant may be withholding information responsive to this request. Having reviewed portions of Mr. Lee's testimony, the court feels that plaintiff's supposition is plausible.

---

[3] Defendant represented to the court that "sales recaps," such as those it produced for the Supply Operations division, are not available for the Corporate Brands Division. However, defendant should be able to produce the functional equivalent of these sale recaps. If not, it must (1) submit a declaration from a managerial employee with first hand knowledge of defendant's financial data system which explains why the reports cannot be created, and (2) produce all data necessary for plaintiff to create a Corporate Brands division equivalent to the sales recaps for the Operations Supply division.

[4] Plaintiff suggests that it may need to supplement its expert reports after defendant produces the requested financial information. To do so, plaintiff must seek leave from the trial court. This court encourages the trial judge to look favorably on such a request.

7

1   Defendant, however, states that, in response to request No. 29, it has produced reports of
2   searches performed and attempts to register the OmniBrands name in 1999-2000. At the hearing,
3   defendant's attorney represented to the court that, after a diligent search, there are no other
4   documents responsive to this request except for those protected by the attorney-client privilege or
5   work product doctrine.

### ii.     Analysis

Pursuant to the representations of defendant's counsel that it has no additional responsive documents, the court denies plaintiff's motion on No. 29 as moot. However, defendant must file declarations by its in-house attorney, Mr. Durant, and the employee[s] responsible for locating and producing documents responsive to request No. 29, as well as any employee[s] responsible for any search for documents that took place after the deposition of Mr. Lee, all confirming that no additional documents responsive to request No. 29 exist. Each declarant should describe the nature and extent of the search for responsive documents.

### 2.     The Deposition of Thomas Lee

Plaintiff moves the court to allow the reopening of Mr. Lee's deposition because it claims that defendant improperly instructed Mr. Lee not to answer questions regarding trade name and trademark searches on the grounds of attorney-client privilege. Specifically, Mr. Lee was instructed not to disclose whether an attorney performed a trademark and/or trade name search for the name "OmniBrands."

### i.     Parties' Arguments

Plaintiff argues that information responsive to this question is not protected by the attorney-client privilege because it does not go to the substance of the communication, and is information bearing directly on defendant's intent. Additionally, plaintiff is not convinced that Mr. Lee actually obtained his knowledge regarding these searches solely from an attorney, and thus wants assurances that Mr. Lee has no non-privileged information on this subject.

Defendant opposes the reopening of Mr. Lee's deposition, arguing that the information plaintiff seeks from Mr. Lee goes to the subject matter of attorney-client discussions, and is therefore privileged.

8

### ii. Legal Standard

The attorney-client privilege protects from disclosure communications between client and attorney for the purpose of obtaining legal advice. *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). However, "[i]t does not cover the fact (or not) of whether one sought legal advice." *Methode Electronics v. Finisar*, 205 F.R.D. 552, 556 (N.D. Cal. 2001). Furthermore, the question of whether a party has conducted a trademark search, and whether it has consulted an attorney with respect to the availability of a specific name, is "not subject to protection under the [attorney-client] privilege asserted or under the work product doctrine. . . . Whether a search has been made in the Patent Office is a question directed to an act or omission bearing upon intent, rather than to a communication." *Masterpiece of Pennsylvania v. Consol. Novelty Co.*, 183 U.S.P.Q. 344 (S.D.N.Y. 1974).

### iii. Analysis

The appropriateness of defendant's objections depends on whether the inclusion of a specific name in a question truly implicates the substance of attorney-client communications.

In *Methode Electronics*, the court considered the instruction by an attorney that a witness not respond to certain foundational questions at a deposition. 205 F.R.D at 552. The court held that a question about whether the witness "had sought legal advice about the patentability of his pluggable transceiver module" did not implicate privileged attorney-client privileged communication. *Id.*

Similarly, the question asked of Mr. Lee at the deposition does not go to the substance of attorney-client communications, even though it includes specifics about the topic of conversation. Rather, it goes to the fact of whether legal advice was sought on a particular subject. Thus, defendant's objection to this question is overruled. Accordingly, the deposition of Mr. Lee may be reopened for the purpose of inquiring:

- Did an attorney perform a trademark search for the name OmniBrands?

Plaintiff may also ask relevant foundational and follow-up questions.

9

### B.     "Work Product" Emails

Plaintiff moves to compel the production of twelve emails designated by defendant as "work product" in defendant's privilege log.

#### 1.     Parties' Arguments

Plaintiff says that the emails designated as "work product" in defendant's privilege log should not be protected by that doctrine because they concern making a business decision and were not created by or for attorneys in anticipation of litigation. At a minimum, plaintiff requests that the court conduct an *in camera* review of the emails to determine whether or not they qualify as work product.

Defendant insists that these emails were produced at the request of an attorney after plaintiff first sent its cease and desist letter, and thus were prepared in anticipation of litigation.

#### 2.     Legal Standard

Material obtained by or for a party or by or for a party's representative in anticipation of litigation is protected from discovery as "work product." *See* FED. R. CIV. P. 26(b)(3). This doctrine is not absolute, and may be overcome through a showing of undue burden in obtaining the substantial equivalent of the materials and substantial need for the materials by the party seeking the discovery. *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2003).

#### 3.     Analysis

It is unclear whether the twelve emails in question truly fall under the "work product" doctrine, and if so, whether plaintiff can overcome the doctrine through a showing of substantial need and undue burden. The court has been presented with insufficient evidence of the subject matter of those emails to make this determination. The defendant's privilege log, even as ultimately amended, is peculiarly uninformative, giving the court nothing to go on other than the defendant's bald representation as to the character of each email in question. This is especially true for the email from Frederick Klose, neither an employee or representative of defendant.

Accordingly, the court will conduct an *in camera* review of the emails to determine whether or not they come within the work product doctrine. In addition to the emails, defendant shall

10

simultaneously submit for *in camera* review, on or before **August 15, 2005**, declarations from persons with particularized, specific first hand knowledge about who the writers and recipients were and why exactly each email was created.

### III.  Contempt or Sanctions?

Plaintiff moves the court to find defendant in contempt for failing to comply with the court's order, and for sanctions in the form of attorney's fees.

#### A.  Parties' Arguments

Plaintiff argues that defendant intentionally obstructed discovery thereby forcing plaintiff to bring this motion to compel.

Defendant responds that there is no basis for sanctions. It asserts that the only documents not produced were customer lists that did not exist or had not been located, and financial information that required a compilation or expert opinion or that defendant did not interpret as being required by the court's order. Defendant further argues that it did not act in bad faith when it failed to produce these documents, and that plaintiff was not prejudiced by this failure.

#### B.  Legal Standard

The Federal Rules Provide:

> If a motion [to compel] is granted . . . the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees.

FED. R. CIV. P. 37(a)(4).

#### C.  Analysis

The court believes that sanctions in the form of attorney's fees are appropriate in this case. Though plaintiff failed to bring a separate motion for sanctions as specified in Local Rule 7-8, the court, in its discretion, will overlook the procedural omission.

The court is unpersuaded by defendant's repeated claims that it has "gone above and beyond" the call of this court's prior order in meeting its discovery obligations. Rather, defendant's compliance

11

has been half-hearted, at best, and the answers of its counsel to the court's questions at the latest motion hearing seemed calculated more toward obfuscation than clarification. Defendant appears to have misrepresented facts to avoid its obligations and stonewalled court-ordered production under cover of unpersuasive technical difficulties and an overly literal interpretation of the court order. Accordingly, defendant is ordered to pay sanctions in the amount of $5000 to plaintiff. Based on all available information, the court finds that this sum will reasonably compensate plaintiff for the attorney fees it incurred in bringing this motion.

At this time, the facts do not appear to justify exploring exercise of the court's contempt power.

## CONCLUSION

Excepting the earlier deadline the court set concerning its *in camera* review of emails, defendant shall produce the documents, provide the information and declarations, and pay the sanctions, all as required by this order, by **August 31, 2005.**

**IT IS SO ORDERED.**

Dated: 8/11/05

/s/ Howard R. Lloyd
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

THIS IS TO CERTIFY THAT A COPY OF THIS NOTICE WILL BE SENT TO:

| | |
|---|---|
| John A. Chatowski | Jachatowski@thelenreid.com |
| Kari Stewart Gregory | kari.gregory@dlapiper.com |
| Jeffrey Mark Hamerling | jeffrey.hamerling@dlapiper.com |
| Suhani Kamdar | suhani.kamdar@dlapiper.com |
| Katherine Anne Keating | Katherine.keating@piperrudnick.com |
| Rachel E. Matteo-Boehm | rachel.matteo-boehm@dlapiper.com |
| Edith Lynn Perry | lperry@thelenreid.com |
| Robert A. Weikert | raweikert@thelenreid.com, mtwalter@thelenreid.com |
| Marlene J. Williams | mjwilliams@thelenreid.com |

\* Counsel are responsible for providing copies of this order to co-counsel who have not registered under the Court's ECF system.

Dated: 8/11/05                    /s/ RNR
                    Chambers of Magistrate Judge Howard R. Lloyd